UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7 |
| KENNETH RAY TINDER ) | |
| ) | Bankruptcy No. 05-01190 |
| Debtor. ) | |
| ) | |
| KENNETH RAY TINDER ) | |
| ) | Adversary No. 06-09106 |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| EDUCATIONAL CREDIT ) | |
| MANAGEMENT CORPORATION, ) | |
| ) | |
| Intervenor/Defendant. ) | |

**ORDER RE: COMPLAINT TO DETERMINE DISCHARGEABILITY
OF STUDENT LOANS**

This matter came before the undersigned for trial on March 10, 2009 on the Complaint to Determine Dischargeability of Student Loans. Debtor/Plaintiff Kenneth Tinder was represented by Steven G. Klesner. Defendant Educational Credit Management Corporation (ECMC) was represented by Brooke Suter Van Vliet and Billy Mallory. After trial, the Court took the matter under advisement. The time for filing briefs has now passed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

**STATEMENT OF THE CASE**

Debtor Kenneth Tinder asserts that he is unable to repay student loans and requests an undue hardship discharge under § 523(a)(8). ECMC asserts that Debtor does not qualify for an undue hardship discharge because he has sufficient income to repay debt and he has not made an effort to repay his loans.

**FINDINGS OF FACT**

Debtor attended Palmer Chiropractic College from October 1985 to October 1988. He financed his education, in part, by borrowing $29,788.79 from Iowa College Student Aid Commission (ICSAC). ICSAC has since assigned the debt to ECMC (Doc. # 13). Debtor currently owes ECMC $86,672.75 with interest

accruing at an annual rate of 8.25%.  Debtor made payments on this debt while he was in practice as a chiropractor but has not made any voluntary payments since 1994.

Debtor owned and operated a chiropractic clinic as a licensed chiropractor from 1991 to 1994 in Jacksonville, Illinois.  He closed his practice in October 1994.  He later sought employment as a chiropractor in a local clinic but decided not to pursue the position due to philosophical differences and because he did not think he would earn sufficient income.  He made no further efforts to find work as a chiropractor but "made himself available" to local practitioners.  Between 1994 and 1999, Debtor worked at various jobs including commercial truck driving but earned little income.

In 1999 Debtor moved to Iowa City with his wife.  His wife obtained a job as a custodian at the University of Iowa Hospitals and Clinics (UIHC).  In 2001, Debtor also started working at UIHC as a custodian.  Debtor and his wife have earned a steady income and consistently received pay increases since they started working at UIHC.  Their jobs provide health insurance and they are contributing to a retirement plan.  Debtor and his wife currently earn combined monthly income of $4,039.82 and have monthly expenses of $3,500.25 (Pl. Br. at 5-6).

Debtor and his wife are both 60 years old.  Debtor estimates that he and his wife will earn a total of $3,000 per month after they retire, assuming they work until they are 66 years old (Pl. Br. at 6).  He testified that he may not be able to work beyond the age of 66 but presented no independent evidence on the issue.

## CONCLUSIONS OF LAW

Student loan debt is not discharged "unless excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependent's."  11 U.S.C. § 523(a)(8).  The debtor has the burden to prove undue hardship by a preponderance of the evidence.  In re Reynolds, 425 F.3d 526, 529 (8th Cir. 2005).  Undue hardship requires "a certainty of hopelessness that the loans will be repaid."  U.S. Dept. of Educ. v. Meling, No. 01-2027, 2002 WL 32107248, at *5 (N.D. Iowa Jan. 22, 2002) (Melloy, J.); In re DeBrower, 387 B.R. 587, 591 (Bankr. N.D. Iowa 2008); contra In re Cumberworth, 347 B.R. 652, 657 (B.A.P. 8th Cir. 2006).  The standard for student loan discharge is intentionally set very high.  DeBrower, 387 B.R. at 591.

The undue hardship test under § 523(a)(8) is fact intensive and requires the court to examine the totality of circumstances of each case. In re Long, 322 F.3d 549, 554 (8th Cir. 2003). The totality of the circumstances test includes an examination of the following factors:

> (1) the debtor's past, present, and reasonably reliable future financial resources; (2) a calculation of the debtor's and her dependent's reasonable necessary living expenses; and (3) any other relevant facts and circumstances surrounding each particular bankruptcy case. Simply put, if the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt – while still allowing for a minimal standard of living – then the debt should not be discharged.

Id. at 554-55 (citations omitted). In the first factor, the court considers "the debtor's present employment and financial situation – including assets, expenses, and earnings – along with the prospect of future changes – positive or adverse – in the debtor's financial position." Id.

Courts have generally included a debtor's spouse's income in the financial analysis. In re White, 243 B.R. 498, 509 (listing 29 cases where courts have considered the income of both the debtor and the debtor's spouse). There is some increasing support for equitably splitting surplus income between the debtor and the debtor's non-filing spouse. Reynolds, 425 F.3d at 535-6 (Bright, J., concurring); In re Innes, 284 B.R. 496, 507-508 (D. Kan. 2002) (finding that the debtor's wife was not required to devote her entire income to repayment of husband's student loans); In re Halverson, __ B.R. __, 2009 WL 396112, at *7 (Bankr. D. Minn. Feb 12, 2009) ("It would be unfair to expect [debtor's wife] to either pay all of [the debtor's] personal expenses just so [the debtor] can make payments on a loan he incurred years before the marriage, or to pay those loans for him."). Allocating all surplus family income to pay a debtor's student loans is tantamount to making a non-filing spouse liable for the debtor's obligations. Innes, 284 B.R. at 508. For purposes of the analysis in this opinion, surplus income will be divided between the debtor and the non-filing spouse.

Under the second factor, the court examines the debtor's living expenses to determine if they are reasonable and necessary. Long, 322 F.3d at 554. Reasonable and necessary is interpreted to mean that the "expenses must be modest, not extravagant, and commensurate with the debtor's resources." In

3

re Mulherin, 297 B.R. 559, 565 (Bankr. N.D. Iowa 2003). Courts are not required to examine the debtor's expenses on a line-by-line basis and eliminate any unreasonable or unnecessary expenses. Cumberworth, 347 B.R. at 659. Instead, the court should determine the reasonableness of the debtor's total monthly expenses. Id.

Courts have considered a variety of other non-economic factors under § 523(a)(8). Long, 322 F.3d at 554. These factors include: (1) debtor's history of repayment; (2) debtor's effort to maximize income or minimize expenses; and (3) debtor's age and health. In re Tyer, 384 B.R. 230, 233-234 (Bankr. N.D. Iowa 2008).

A debtor's loan repayment history provides insight on the debtor's willingness to repay his or her student loans. In re Soler, 261 B.R. 444, 459 (Bankr. D. Minn. 2001). A history of consistent, if not perfect, payments of student loan debt weighs in the debtor's favor. In re Houshmand, 320 B.R. 917, 921 (Bankr. W.D. Mo. 2004) (Dow, J.).

Debtors are also required to make an effort to maximize earning potential and minimize expenses. In re Faktor, 306 B.R. 256, 264 (Bankr. N.D. Iowa 2004). The debtor's ability to earn significantly higher income in a different career is relevant. Wilson, 270 B.R. at 294. In In re Oyler, the Sixth Circuit commended the debtor's decision to work for a church but noted that "choosing a low paying job cannot merit undue hardship relief." 397 F.3d 382, 386 (6th Cir. 2005). This Court has also considered the willingness of a debtor to seek employment outside of a small town. Wilson, 270 B.R. at 294. Debtors must also minimize monthly expenses and dedicate any surplus income to debt repayment. Id. For example, a debtor should not pay for a dependent's college education to the detriment of his or her own creditors. Houshmand, 320 B.R. at 923.

The debtor's ability to pay student loan debts may be influenced by the health of the debtor, a spouse or dependents. Meling, 263 B.R. at 279. The debtor, however, must show that the medical condition impacts the debtor's current or future financial situation. In re Reynolds, 425 F.3d 526, 529-530 (8th Cir. 2005) (finding that the debtor had no prospect of obtaining a better paying job because of her medical condition); Cumberworth, 347 B.R. at 660 (noting debtors' medical conditions caused them to incur significant food and medical expenses); Houshmand, 320 B.R. at 922 (noting that while debtor had numerous medical conditions, his impairment did not interfere with his work responsibilities); In re Lee, 387 B.R. 1, 4 (Bankr. N.D.

Iowa April 16, 2008) (finding that debtor's back pain had not hindered his ability to work at his current job).

Another factor courts consider is the debtor's age. In re Jesperson, 366 B.R. 908, 916 (Bankr. D. Minn. 2007) (O'Brien, J.); Tyer, 384 B.R. at 234. The fact that a debtor is near retirement age does not mean that the debt will be discharged. Houshmand, 320 B.R. at 921. Debtors that apply for loans late in life or request significant deferments and forbearances understand that they will be required to delay retirement in order to earn sufficient income to repay these obligations. Id.

**ANALYSIS**

Debtor alleges that his student loan debt should be discharged because repayment would constitute an undue burden. The Court concludes that Debtor has not established an undue burden under a totality of the circumstances.

Debtor has sufficient income to pay some of his student loan debt while remaining current on his reasonably necessary living expenses. Debtor states that he has $538.75 available for loan repayment (Pl. Br. at 6). His expenses are generally reasonable except for his mortgage expense. At trial, Debtor testified that $258 of this expense was "voluntary". As this additional mortgage payment is voluntary, Debtor is able to reallocate this sum to repayment of his student loan debt. Thus, Debtor's household's total surplus income is $796.75. As Debtor and his wife earn equivalent incomes, Debtor has $398.38 available to pay his student loan debt.

The history of Debtor's student loan shows that Debtor did not make a substantial effort to repay his loans. Debtor has not made any voluntary payments in the last 15 years even though he and his wife have earned a steady income for the last 7 years while employed at UIHC. Even modest payments during this time would have reduced the current balance.

Debtor has had a chiropractic degree for 20 years but practiced for less than four years. For a variety of reasons, he was unable to generate much income as a chiropractor. Instead, he obtained a commercial trucking license and worked various temporary jobs. None of these jobs generated much income.

Debtor alleges that repayment of the student loan is an undue burden because it would require him to make payments well beyond his retirement age. Even if Debtor reallocates all surplus income to loan payments, he will need to continue making

student loan payments well beyond the traditional retirement age of 66. The Court recognizes that delaying retirement is a burden, but it is not "undue".

### SUMMARY

Based on the totality of the circumstances, the Court concludes that Debtor has not established that he is entitled to an "undue hardship" discharge of his student loan debt. Debtor has sufficient income to make significant payments on his student loan debts. Debtor did not make a reasonable effort to pay his student loans when he was earning sufficient income. Finally, Debtor will need to delay his retirement but this burden is mitigated by his failure to make payments when he had sufficient income to do so. As Debtor has not established an undue hardship, his student loan debts are excepted from discharge under § 523(a)(8).

**WHEREFORE**, the Complaint to Determine Dischargeability of Student Loans is DENIED.

**FURTHER**, Debtor Kenneth Ray Tinder's student loan debt to Educational Credit Management Corporation is excepted from discharge under 11 U.S.C. § 523(a)(8).

**FURTHER**, judgment shall enter accordingly.

DATED AND ENTERED: April 14, 2009

*[signature]*

PAUL J. KILBURG
CHIEF BANKRUPTCY JUDGE